IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD HENTSCHEL,<br><br>              Plaintiff,<br><br>   v.<br><br>COUNTY OF DUPAGE, JENNIFER SINN and MARGARET EWING,<br><br>              Defendants. | Case No. 21 C 6503<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DuPage County's Motion for Summary Judgment. For the reasons stated herein, the Court grants Defendants' Motion.

### I. BACKGROUND

Plaintiff Richard Hentschel (hereinafter, "Hentschel," or "Plaintiff") filed this lawsuit against Defendants DuPage County ("DuPage"), Jennifer Sinn, and Margaret Ewing (collectively, "Defendants"), in December 2021 alleging claims of associational disability discrimination under the Americans with Disabilities Act ("ADA"); retaliation under the Family Medical Leave Act ("FMLA"); and defamation. The Defendants now seek summary judgment in its favor on all claims.

### A. Plaintiff's Performance at DuPage

Hentschel worked as a Senior Budget Analyst for Defendant DuPage in the Finance Department beginning in April 2019. (Dkt. No. 1, Complaint ("Compl.") ¶ 7; Dkt. No. 39, Defendants' Statement of Facts ("Def. SOF") ¶ 7.) The Senior Budget Analyst position is expected to be a team lead and complete budget tasks independently, taking the burden off management. (Def. SOF ¶ 8.) Within the Budget Team, Hentschel worked alongside two other members – Defendant Jennifer Sinn ("Sinn"), who supervised the team, and a budget analyst. (*Id.*)

One of the Budget Team's tasks in 2020 was to prepare the DuPage County "Budget Book" for the County's financial plan for fiscal year 2021. (Def. SOF ¶ 10.) The preparation for the Budget Book takes place primarily from August through December, and everyone on the budget team works on the Budget Book. (*Id.*) The process for developing the financial plan begins in April, when County departments begin preparing their budgets to deliver to the Finance Department in July. (*Id.* ¶ 14.) After incorporating feedback from the Financial Department, the Budget Team prepares the schedules for the Budget Book and presents it to the County Board Chair, who presents it to the Board at the end of September. (*Id.*) The Board has until the end of November to present a budget for the County. (*Id.*) Those on the Budget Team were informed about

- 2 -

how to operate Infor ERP System ("Infor") and were expected to update Microsoft OneNote – a software documenting aspects of the budget process. (*Id.* ¶ 11.)

Hentschel's performance was reviewed twice during his time at DuPage — first in October 2019, six months after he started, and once in October 2020, a few months before his termination in December 2020. (*Id.* ¶ 16.) In his first review, Hentschel received a score of 3.4, indicating that his performance "meets jobs expectations." (*Id.* ¶ 17.) The comments documented his Excel and communication skills but also noted his "need to be proactive by learning all tasks in One Note and keeping it up to date." (Dkt. No. 39-9, Exhibit I, at 3.) The comments also documented Hentschel's failure to take initiative to consult reference documents when he had a question, failure to work independently of management instruction, and his need to document in a notebook what was said and assigned to him in meetings. (*Id.* at 2-4.) Among the "goals" listed in his review included proficiency in use of the Infor system, more regular updating of Microsoft OneNote, and checking work for errors prior to submitting. (*Id.* at 5.) Plaintiff signed off on this evaluation and did not request changes. (Def. SOF ¶ 18.)

In his October 18, 2020, review, Hentschel received a score of 3.1, meeting job expectations. His reviewers again noted his

need to "be more thorough and detail oriented in reviewing documents/budgets," especially when documents were being released "to the County Board/public." (Dkt. No. 39-10, Exhibit J, at 1.) The comments also describe errors that Hentschel made in documents and budgets, as well as "budget numbers not analyzed," and "budget items [] not completed even after direction was given in early July." (*Id.*) One comment noted once more that "Rich needs to take notes when talking to others" and "needs to be proactive by learning all tasks in OneNote and keeping it up to date." (*Id.* at 2.) The goals listed were the same as those listed the previous year. (*Id.* at 2, 4.) Hentschel signed the evaluation and provided no comments. (Def. SOF ¶ 21.)

Sinn testified during her deposition that before Hentschel's six-month probationary period was over in October 2019, she had wanted to terminate Hentschel as a result of his "argumentation and debating." (Dkt. No. 39-4 ("Sinn Dep.") at 14:2-6.) Sinn raised the issue with the Deputy Chief Financial Officer (CFO), Mary Catherine Wells ("Wells"), who agreed with the suggested termination, but Jeffrey Martynowicz ("Martynowicz"), the CFO of DuPage County, selected to keep Hentschel on. (*Id*. at 14:7-14.)

### B. Plaintiff's FMLA Leave

Two days after his second performance review, Hetschel applied for Family Medical Leave ("FMLA"), on October 20, 2020.

- 4 -

(Def. SOF ¶ 63.) Hentschel's FMLA leave was approved on November 4, 2020. (*Id*. ¶ 64.) Hentschel sought leave to care for his teenage daughter who was struggling with and hospitalized for mental health issues. (Compl. ¶ 9.) Hentschel needed to be available for meetings or calls during the workday regarding her care. (*Id*.) Defendant Sinn was notified of his intermittent FMLA on November 4, the date he was approved. (Def. SOF ¶ 65.) Sinn did not discuss Hentschel's FMLA leave with anyone beyond forwarding the FMLA memoranda to Martynowicz. (*Id.* ¶¶ 68, 73.) Mason-Ewing, in HR, also knew of Hentschel's FMLA status. (Dkt. No. 43, Plaintiff's Statement of Facts ("Pl. SOF") ¶ 10.)

Plaintiff took FMLA leave exactly five times, for two hours on October 28, 2020; one hour on October 30, 2020; seven hours on November 5, 2020; one hour on November 19, 2020, and four hours on November 25, 2020, totaling fifteen hours. (Def. SOF ¶ 69.)

### C. Plaintiff's Termination

Hentschel was terminated on December 21, 2020. Leading up to his termination, Hentschel had been working on the Coronavirus Relief Fund ("CRF Project") under the supervision of Deputy Chief Financial Officer Mary Catherine Wells ("Wells"). (Def. SOF ¶ 30.) The CRF Project related to $161 million dollars that the County received from the Federal Government as a part of the Federal Government's Coronavirus Relief legislation to aid the County's

response to the pandemic. (*Id.* ¶ 31.) After Plaintiff completed his work on the CRF project, it would be reviewed by the Finance Department's senior accountants, the accounting manager, Ms. Wells, internal audit, external audit, single audit, the County Board for passage and ultimately the State's auditor and the U.S. Treasury Department. (*Id.* ¶ 33.)

The deadline for the CRF project was December 30, 2020, and the County Board needed to approve the journal entry before that date. (*Id.* ¶ 34.) The County Board was set to have a special call meeting on December 22, 2020 to approve the journal entry that Hentschel was preparing. (*Id.* ¶ 35.) In order to meet the deadline and comply with the Illinois Open Meetings Act and County procedure, the deadline to review and provide the agenda to the County Board staff was Thursday night (December 17, 2020) or, at the latest, Friday morning (December 18, 2020). (*Id.* ¶ 36.) Wells testified that Hentschel's inability to use the Infor system significantly delayed the CRF team, and that the delay would have been avoidable had Hentschel followed instructions and known how to use Infor. (*Id.* ¶ 42.) Wells also testified that Hentschel changed the County's standard practice in presenting the information and became oppositional with Wells when she told him to correct his mistakes – each of which further caused delays. (*Id.* ¶¶ 45, 47.) Hentschel completed the project on Friday,

- 6 -

December 18. Hentschel argues he understood the deadline to be Friday. (Pl. SOF ¶ 31.) In order to meet the deadline and comply with the Illinois Open Meetings Act and County procedure to produce the agenda to the County Board staff by Friday (December 18, 2020), DuPage asserts that the Budget Team's deadline was Thursday (December 17, 2020). Because Hentschel did not submit his portion of the assignment until Friday morning, Defendants allege the Budget Team missed its deadline to present to the County Board. (*Id*. ¶ 50.)

Martynowicz watched Hentschel leave the Finance Department at 4:30 p.m. on Thursday, before delivering his portion of the project, while other senior staff, including himself, stayed late to complete the CRF project. After this, Martynowicz initiated the procedure to terminate Hentschel. (*Id*. ¶¶ 51-52.) Sinn testified that she had not wanted to terminate Hentschel at this stage, but rather wanted him placed on a Performance Improvement Plan ("PIP"). (Sinn Dep. at 30:6-9.) However, the guidance from Defendant Mason-Ewing in the Human Resources Department was to terminate Hentschel. (Def. SOF. ¶ 55.) After this decision was made, Sinn drafted Hentschel's termination letter with input from Wells, who also signed the letter, and a copy of the letter was placed in Hentschel's personnel file. (Def. SOF ¶ 80.) Sinn testified that she never told anyone she thought Hentschel's performance issues

were related to his daughter's care and his FMLA leave. (Sinn Dep. at 37:10-22.)

## II. LEGAL STANDARD

Summary Judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch,* 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id.* When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Id.* at 380.

## III. DISCUSSION

### A. ADA Claim

The Complaint alleges that DuPage discriminated against Hentschel based on his association with an individual (in his case, his daughter), with a disability. (Compl. ¶¶ 15-18.) An employer is prohibited from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to

have a relationship or association." 42 U.S.C. § 12112(b)(4); see also 29 C.F.R. § 1630.8. Even though "an employer does not have to accommodate an employee because of her association with a disabled person, the employer cannot [adversely treat] the employee for unfounded assumptions about the need to care for a disabled person." *Magnus v. St. Mark United Methodist Church,* 688 F.3d 331, 337 (7th Cir. 2012).

The Seventh Circuit endorsed a modified *McDonnell Douglas* test for association discrimination claims, stating that a plaintiff can prove his prima facie case by establishing: (1) he was qualified for the job at the time of the adverse employment action; (2) he was subjected to an adverse employment action; (3) at the time, his employer knew he had a relative or associate with a disability; and (4) his case falls into one of the three relevant categories of expense, distraction, or association. *Ciesielski v. JP Morgan Chase & Co.,* 2016 WL 3406399, at *6 (N.D. Ill. June 21, 2016) (citing *Magnus,* 688 F.3d at 336). After making a prima facie case, "the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.,* 988 F.3d 948, 957 (7th Cir. 2021) (internal citation omitted).

In seeking summary judgment on this claim, Defendants argue that Hentschel cannot make a *prima facie* case of disability discrimination under this modified test because he failed to show that any decision maker who chose to terminate Hentschel knew about Hentschel's daughter's alleged disability. Defendants argue that only Sinn knew details about Hentschel's daughter's disability. This is unpersuasive, as Defendants do not dispute that Wells, Mason-Ewing, and Martynowicz were each aware that Hentschel had applied and was approved for FMLA, even if they did not know specifics about Hentschel's daughter. (Pl. SOF ¶ 10; Def. SOF ¶ 65.)

In its memorandum opinion on the Motion to Dismiss, this Court already ruled that Hentschel had not alleged facts such that his claim would fall under any of the three categories – expense, distraction, or association – but that Plaintiff's Complaint survived because it adequately pleaded that Plaintiff was fired "under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Magnus,* 688 F.3d at 337 (citing *Dewitt v. Proctor Hosp.,* 517 F.3d 944, 952 (7th Cir. 2008)). The remaining question, then, is whether Plaintiff can demonstrate that Defendants' proffered justifications for terminating Plaintiff were pretextual and whether Plaintiff's FMLA was a

- 10 -

"determining factor" in the decision to terminate. *Id*. Defendants argue that even if Plaintiff had presented a *prima facie* case of disability discrimination, Plaintiff's claim nevertheless fails to overcome the County's non-discriminatory reason for terminating Plaintiff and offers no evidence of discriminatory intent. The Court agrees.

Defendants offer and the record exhibits several legitimate justifications for terminating Hentschel relating to Hentschel's unresolved and repeated errors in his work product. First, Defendants point to the termination letter listing several deficiencies: numerous errors in the FY2021 Financial Plan; failure to learn the Infor ERP system; reliance on management to perform research tasks that were assigned to Hentschel; and incorrect/unsatisfactory work on the CRF Fund Payroll estimates. (Dkt. No. 43-7, Termination Letter). Second, Hentschel's two performance reviews elicit critiques that his supervisors had with his work, even before Hentschel even applied for FMLA. Third, Defendants offer evidence conveying dissatisfaction with Hentschel's work on the CRF project, including that Hentschel took nearly five hours to obtain necessary information for the CRF project for an assignment that should have taken 30 minutes, because of Hentschel's inability to utilize Infor. (Def. SOF ¶¶ 40-41.) And fourth, Hentschel submitted his portion of the CRF

assignment on Friday, December 18, when the deadline was Thursday, December 17.

Plaintiff argues Defendants' justifications are pretextual. To meet the burden of showing that the employer's stated reason was pretextual, a plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's stated reason "that a reasonable person could find [it] unworthy of credence." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal quotations omitted). First, Plaintiff disputes the Friday deadline error, testifying that he was told the deadline was noon on Friday December 18, and he submitted his assignment before 11 a.m. that day without error. There seems to be a genuine dispute about when Plaintiff understood the deadline to be. But because Defendants do not rely solely on the missed deadline as justification for Plaintiff's termination, the Court does not find this constitutes sufficient evidence of pretext as to deny summary judgment.

Second, Plaintiff argues that because Martynowicz did not check to confirm whether Plaintiff actually left the office early on Thursday, the idea that he fired Plaintiff for doing so is "unworthy of credence" and thus pretextual. (Dkt. No. 41, Plaintiff's Opposition, at 9.) There is no dispute that Plaintiff left early on Thursday. And again, Defendants offer sufficient

additional justification for firing Plaintiff beyond the Friday deadline issue. Further, even if Martynowicz mistakenly believed that Plaintiff knew the deadline was Thursday evening, in assessing pretext, a court does "not evaluate whether the stated reason 'was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain'" the adverse action. *Harden v. Marion Cnty. Sheriff's Dep't,* 799 F.3d 857, 864 (7th Cir. 2015) (citation omitted); *see also Castetter v. Dolgencorp, LLC,* 953 F.3d 994, 997 (7th Cir. 2020) (same). Contrary to Plaintiff's suggestion, that Martynowicz did not literally follow Hentschel out of the building to confirm he left does not suggest he did not honestly believe he left before the deadline.

Third, Plaintiff argues Defendants' justifications for terminating Plaintiff have shifted, since the termination letter mentioned nothing about Plaintiff leaving early from work before the December 17 deadline. Plaintiff's reliance on *Perfetti v. First Nat. Bank* is inapt here. 950 F.2d 449, 456 (7th Cir. 1991). The Seventh Circuit in *Perfetti* noted that if at the time of the adverse employment decision the decision-maker gave one justification, and then at trial gave a different reason unsupported by documentary evidence, the jury could reasonably conclude pretext. *Id*. This case is not at trial, and Defendants' justifications here are not "shifting." The record evidence

- 13 -

supports that there were several reasons why Defendants felt justified in terminating Plaintiff, and Plaintiff provides no reason why Defendants must include each of these justifications in the formal termination letter.

Fourth, Plaintiff offers "similarly situated" employees that were allegedly treated more favorably than Plaintiff because they received progressive discipline for performance problems, which Plaintiff was not afforded before termination. Plaintiff concludes the other employees were "similarly situated" to Plaintiff because they, too, were in the Finance Department and reported to Sinn, though were not on FMLA leave. Although the "similarly situated" concept is a flexible one, *Henry v. Jones,* 507 F.3d 558, 564 (7th Cir. 2007), the comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories, *Filar v. Bd. of Educ. of Chi.,* 526 F.3d 1054, 1061 (7th Cir. 2008). Here, each of the four comparators was lower in rank than Plaintiff, who was second to Defendant Sinn's on the Budget Team. (Pl. SOF ¶ 19.) *See Senske v. Sybase, Inc.,* 588 F.3d 501, 510 (7th Cir. 2009) (salesmen with "lower-ranking sales positions" were not similarly situated to the plaintiff, who was fired for performance reasons). Defendants were entitled to hold lower ranking employees to a lower standard than Hentschel. *Id.*

- 14 -

Fifth, Plaintiff contends that Defendants' failure to follow its own policies pertaining to discipline and termination suggests Defendants' justifications were pretextual. Plaintiff points to DuPage County procedures that provide for the employee's opportunity to explain his or her conduct before disciplinary action, as well as a human resources review of the manager's documentation before disciplinary action. Yet the policy carves out termination as a possibility in the case of a "severe violation, or repeated violations." (Dkt. No. 43-9, Disciplinary Guidelines, at 4.) It was within DuPage County's discretion to sidestep the procedures laid out — particularly for a more senior employee. *See Bideau v. Beachner Grain, Inc.,* 2011 WL 4048961, at *9 (D. Kan. Sept. 13, 2011) ("when an employer's progressive discipline policy is a permissive one, a failure to proceed through each step of the disciplinary process is not indicative of pretext."); *see also Berry v. T. Mobile USA, Inc.,* 490 F.3d 1211, 1222 (10th Cir. 2007) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest [the employer's reasons for termination] were pretextual") (internal quotations omitted). Plaintiff correctly cites *Rudin v. Lincoln Land Cmty. Coll.* for the proposition that an employer's failure to follow its own internal employment procedures can constitute evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.,*

420 F.3d 712, 727 (7th Cir. 2005). But failure precisely to follow internal guidelines – which already permit sidestepping – is not sufficient on its own to raise an inference of discriminatory intent.

Finally, Plaintiff argues the timing of Plaintiff's termination – 6 weeks after approval for FMLA leave – is suspicious and suggests pretext. Although temporal proximity can serve as an important evidentiary ally of the plaintiff, it is rarely alone sufficient to create a triable issue on causation. *Cieslieski,* 2016 WL 3406399, at *9; *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.,* 559 F.3d 706, 713 (7th Cir. 2009). Plaintiff took FMLA leave a total of five times, totaling fifteen hours, between October 28, 2020, and November 25, 2020, and Plaintiff was terminated on December 21, 2020. Any argument of suspicious timing is undercut by preexisting and documented issues that Plaintiff's supervisors had with Plaintiff's performance even before he applied for FMLA. The more telling temporal proximity is that between Plaintiff's termination and Plaintiff's delivery of his CRF assignment on Friday, December 18 instead of Thursday, December 17.

Ultimately, Plaintiff offers no evidence suggesting Defendants fired Plaintiff because of his FMLA leave. Plaintiff does not argue his claim falls under any of the three categories

- 16 -

of expense, distraction, or disability by association. Plaintiff concedes that no employee discouraged Plaintiff from taking FMLA at any time. (Def. SOF ¶¶ 60, 66-67.) Plaintiff has not offered evidence – circumstantial or otherwise – that calls into question whether Martynowicz, Mason-Ewing, or Wells honestly believed that Plaintiff failed to meet expectations or that termination was the best option. Here, the justifications for terminating Plaintiff are credible. This is true particularly in light of the employment context at DuPage County, where work product errors on the budget risk directly impacting taxpayers' money. A reasonable jury would not be likely to find in Plaintiff's favor here, and the Court grants summary judgment for the ADA claim.

### B. FMLA Retaliation

The FMLA "provides eligible employees the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period because of a serious health condition, including the serious health condition of a family member," and it "affords employees protection in the event that they are retaliated against because of their choice to exercise their rights under the Act." *Lewis v. Sch. Dist. #70,* 523 F.3d 730, 741 (7th Cir. 2008) (citing 29 U.S.C. § 2615(a)). "Retaliation claims under the FMLA . . . require three familiar elements: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against

the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park,* 888 F.3d 895, 901 (7th Cir. 2018).

At issue here is the third element – causation. Plaintiff relies on the same pretext arguments he made in support of the ADA claim. This argument fails for the same reasons the Court set out above. *See Castillo v. Franciscan Alliance, Inc.,* 2022 WL 11762208, at *9 (N.D. Ind. Oct. 19, 2022). Summary judgment in Defendants' favor is appropriate.

### C. Defamation

Plaintiff's final claim alleges the statements in Plaintiff's termination letter were defamatory under Illinois state law. This Court held at the Motion to Dismiss stage that Plaintiff's Complaint adequately pled the allegedly defamatory statements were defamation *per quod,* not *per se*. A Plaintiff must show actual damages of a pecuniary nature to succeed on a defamation *per quod* claim. *Hukic v. Aurora Loan Serv.*, 588 F.3d 420, 438 (7th Cir. 2009). Plaintiff alleges that Mason-Ewing decided to recommend Plaintiff's termination because of the statements in the Termination Letter. Plaintiff also asserts that as a result, the letter caused pecuniary damages resulting in loss of income and benefits. But this misrepresents the timing of undisputed facts. Mason-Ewing testified, and Plaintiff does not dispute that "after

it was determined that [Hentschel] would be terminated . . . the [termination] letter was drafted and finalized." (Dkt. No. 39-13, Mason-Ewing Deposition, at 28:11-15.) Thus, the statements in the letter could not have caused Plaintiff's termination if the letter was drafted after the decision was made to terminate him.

As a result, Plaintiff fails to show any pecuniary harm resulting from the statements themselves, and Summary Judgment is appropriate on this claim.

### III. CONCLUSION

For the reasons stated herein, the Court grants Summary Judgment on all claims.

**IT IS SO ORDERED.**

                                Harry D. Leinenweber, Judge
                                United States District Court

Dated: 10/26/2023